IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STEEL WORKERS OF AMERICA, District 1/Sub-District 3 | : | Case No. 1:06CV00171 |
| and | : | District Judge Susan J. Dlott |
| UNITED STEEL WORKERS OF AMERICA, Local 14340, | : | ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| Plaintiffs, | : | |
| v. | : | |
| COGNIS CORPORATION, | : | |
| Defendant. | : | |

This matter comes before the Court on the parties' cross-motions for summary judgment, specifically Plaintiffs United Steel Workers of America, District 1, Sub-District 3's and United Steel Workers of America, Local 14340's Motion for Summary Judgment (docs. 17 and 22);[1] Defendant Cognis Corporation's Motion for Summary Judgment (doc. 16); Defendant's Response in Opposition to Plaintiffs' Motion (doc. 23); and Plaintiffs' reply thereto (doc. 24). For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment (doc. 17) and **DENIES** Defendant's Motion for Summary Judgment (doc. 16).

**I.     BACKGROUND**

Plaintiffs are the United Steelworkers of America and the United Steelworkers of

---

[1] Plaintiffs originally filed an incorrect draft of their memorandum in support of their motion. Leave was granted to amend the memorandum (doc. 21). Thus, the motion may be found at document seventeen and the memorandum at document twenty-two.

America, Local 14340 (jointly referred to as the "Union").  The Union previously was the bargaining representative for employees at Defendant Cognis Corporation ("Cognis"), which operates a plant in Ivorydale, Ohio.  For purposes of the cross-motions for summary judgment, the parties filed a Joint Stipulation of Facts (doc. 15) and Joint Exhibits (doc. 18).

### A. The Expired Collective Bargaining Agreement

The Union and Cognis had been parties to a series of collective bargaining agreements ("CBA").  (Joint Stip. of Facts doc. 15 ¶ 2.)  The most recent CBA was effective February 5, 2001 through February 2, 2004.  (Def. Brief in Support doc. 16 ¶ 3.)  The CBA provided for automatic one year renewals, which the parties utilized once.  The CBA expired the following year, after attempts to negotiate a new CBA failed.  (Joint Ex. A, doc. 18 at 29; Joint Stip. of Facts, doc. 15 ¶ 2.)

The expired CBA contains a three step grievance procedure in Article IX.  (Joint Ex. A, doc. 18 at 16-17.)  Step I requires a meeting between the employee and his immediate supervisor.  (*Id.* at 16.)  Step II involves a meeting with Cognis and Union representatives.  (*Id.*)  After a grievance is denied in writing at Steps I and II, an aggrieved employee can resort to Step III, arbitration. (*Id.*)

The CBA also referred to two other agreements - the Benefit Plans and the Pension Plan.  Article XIX of the expired CBA provided that "[t]his Agreement, the Benefit Plans and Pension Plan, are the complete agreements between the parties . . .." (*Id.* at 29.)  Article XV, entitled "Pensions", required Cognis to fund the "Pension Plan" appropriately.  (*Id.* at 24.)

### B. The Pension Plan

In addition to the CBA and referenced therein, the parties also entered into an agreement entitled "United Steelworkers of America/Emery Chemicals Pension Plan" ("Pension Plan").

(Joint Ex. B, doc. 18.) The stated purpose of the Pension Plan is to "effectuate those portions of the Wage Agreement entered into by and between the Union and the Company" and to provide a pension plan for the "Employees of the Company." (*Id.* at 2.) "Employee" is defined in the Pension Plan to include "all employees of the Company at Ivorydale, Ohio and especially excludes all employees not covered by the terms of the Wage Agreement." (*Id.*)

Section 9 of Article I of the Pension Plan provided for termination on February 1, 1993, but also provided for automatic continuance of the Plan for one year periods unless either party made timely notification in writing that discontinuance or modification was desired. (*Id.* at 33.) Finally, Article VII of the Pension Plan provided for arbitration of "any disagreement between the parties hereto as to the meaning or interpretation of this Agreement . . .." (*Id.* at 38.)

### C. The Strike and Subsequent Grievance

The union went on strike when the most recent CBA expired on February 7, 2005. (Joint Stip. of Facts*,* doc. 15 ¶¶ 2, 5.) That strike is on-going. In order to continue operating, Cognis has hired permanent replacement workers. (*Id.* ¶ 6.) Cognis has treated the replacement workers as being covered by the Pension Plan, and accordingly, the replacement workers are accruing credited service under the Pension Plan. (*Id.* ¶¶ 7, 8.)

On June 29, 2005, the Union filed a grievance based on Cognis's decision to treat the replacement workers as being covered by the Pension Plan. (*Id.* ¶ 8.) The Union alleged violations of the CBA, the Pension Plan, and the Savings Plan. (*Id.*) On July 6, 2005, Cognis issued a written denial of the grievance. (*Id.* ¶ 9.) The Union then proceeded to Step II of the expired CBA's grievance procedures. (*Id.* ¶ 10.) In a letter dated September 22, 2005, Cognis denied the grievance for a second time. (*Id.* ¶ 11.) Five days later, the Union told Cognis that it was appealing the grievance to arbitration, Step III of the expired CBA grievance procedures.

(*Id.* ¶ 12.) Immediately, Cognis notified the Union that it declined to arbitrate the grievance based on its legal understanding that the right to arbitrate "does not survive the expiration of a labor contract." (*Id.* ¶ 13; Joint Ex. H, doc. 18.)

In March 2006, the Union filed this suit seeking an order compelling Cognis to arbitrate the grievance. (Joint Stip. of Facts, doc. 15 ¶ 14.) Since then, however, the employees on strike voted against continued representation by the Union, and decertification has been confirmed by the National Labor Relations Board ("NLRB"). (Harris Aff. ¶ 6 and Ex. 2 thereto.)

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

**III.     ANALYSIS**

A company is not obligated to arbitrate a labor dispute, unless it has contractually agreed to do so. *Litton Financial Printing v. NLRB*, 501 U.S. 190, 200 (1991); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "[W]hether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract between the parties." *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 547 (1964). Where an agreement contains an arbitration clause, a presumption of arbitrability arises. *AT & T Technologies, Inc. v. Commun. Workers of America,* 475 U.S. 643, 650 (1986). This presumption may only be overcome if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* (quoting *United Steelworkers,* 363 U.S. at 582-583). The role of the court is limited to determining whether "the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers,* 363 U.S. at 564. "A court does not weigh the merits of a grievance or determine the rights of parties under a collective bargaining agreement." *Int'l Ass'n of Bridge, Structural, and Ornamental Iron Workers, Local Union No. 44, and No. 290 v. J & N Steel and Erection Co., Inc.,* 8 Fed. App'x 381, 385 (6th Cir. 2001).

"When presented with an issue of arbitrability, the court generally faces two separate scenarios." *Id.* In one scenario, the court is asked to decide whether the agreement covers a particular dispute. In these cases, the court will decide the matter by examining the scope of the arbitration clause. *United Steelworkers,* 363 U.S. at 568. In the second scenario, the court is asked to decide whether a valid agreement to arbitrate exists. *J & N Steel*, 8 Fed. App'x at 385-386. "This may occur if a party argues (1) that they never entered into an agreement to arbitrate

at all, or (2) that the arbitration agreement has expired or terminated." *Id.* at 386. The court determines whether the parties entered into an agreement to arbitrate, however, questions of expiration or termination are left to the arbitrator. *Id. See also Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 v. Interstate Distributor Co.,* 832 F.2d 507 (9th Cir. 1987); *Abram Landau Real Estate v. Benova,* 123 F.3d 69, 72 (2d Cir. 1997). A court may not decide whether an arbitration clause has expired or terminated, because "resolution of the issue involves examining and interpreting the termination provisions of the agreement." *J & N Steel*, 8 Fed. App'x at 386. On summary judgment, some evidence must exist "to create a genuine issue of material fact that termination is an issue. If so, then the issue of termination should be referred to an arbitrator." *Id.* at 387.

In the instant case, the Pension Plan Agreement is a free standing contract between the parties, separate and distinct from the expired CBA. This is illustrated by language in the CBA, and by distinct arbitration and termination provisions. Article XIX of the CBA states that the CBA, Benefit Plans, and Pension Plan "are the complete *agreements* between the parties." (Joint Ex. A at 29) (emphasis added). The use of the plural indicates that the CBA and Pension Plan were two separate agreements. In addition, the CBA and Pension Plan have distinct arbitration provisions. The CBA permits arbitration of a grievance if it is twice denied by the company and required meetings have been held. In contrast, the Pension Plan permits immediate arbitration of any dispute regarding the meaning or interpretation of the Pension Plan.

The CBA and Pension Plan also have separate termination provisions. The expired CBA became effective February 5, 2001 and was to remain effective until February 2, 2004. After that, the agreement would automatically renew for periods of one year. In fact, the parties extended the CBA one time, and then it expired February 7, 2005. The Pension Plan became

effective February 5, 1990 and continued to be effective until February 1, 1993. Since then, the Pension Plan has automatically renewed for periods of one year. Both agreements require that a party seeking to terminate or modify an agreement notify the other party at least sixty days prior to the expiration/renewal date.

Though the termination provisions are similar, the fact remains that the Pension Plan has its own termination provision. Nothing in either agreement suggests that the termination of the CBA automatically terminates the Pension Plan. In addition, no evidence has been presented, nor has it been suggested that during negotiations for a new CBA or upon expiration of the CBA either party assumed that the Pension Plan would terminate as well. In fact, Cognis's action in allowing replacement workers to accrue credited service under the Pension Plan assumes that the Pension Plan did *not* expire at the same time as the CBA. Thus, the Pension Plan is a separate agreement with its own expiration clause, which has not been exercised by either party.

Nonetheless, Cognis argues that the Pension Plan is "part and parcel of the CBA" and that the termination provision in the CBA also applied to the Pension Plan. Cognis states that "[w]here multiple documents constitute a single agreement, a provision in one applies to the entire agreement." In support of this proposition, Cognis cites the unpublished opinion of *River Oaks, Inc. v. Rohrback Coasasco Sys., Inc.*, No. 1:05CV1104, 2006 WL 753105 (N.D. Ohio Mar. 22, 2006).

In that case, the parties entered into a Purchase Agreement and a Consulting Agreement. *Id.* at *1. The Purchase Agreement stated that "[t]his Agreement, together with the Exhibits and other writings referred to herein and delivered hereto, constitutes the entire agreement between the parties . . .." *Id.* at *2. The court applied the arbitration clause found in the Consulting Agreement to a claim for breach of the Purchase Agreement. *Id.* at *3.

This case, however, does not aid Cognis. The CBA specifically states that the CBA, Pension Plan and Benefit Plans "are the complete *agreements* between the parties . . .." (Joint Ex. A at 29) (emphasis added). The use of the plural form indicates separate agreements. In contrast, the Purchase Agreement in *River Oaks* states that it and other writings referred within the Purchase Agreement constituted the "entire *agreement*." *Id.* at *2 (emphasis added).

Cognis also points to *Honeywell Int'l., Inc. v. NLRB*, 253 F.3d 125 (D.C. Cir. 2001). Similar to the facts at bar, in this case the parties had several agreements - a core CBA, a Competitiveness Agreement, and an Effects Bargaining Agreement ("EBA") covering various benefits including severance pay. After expiration of the CBA, a dispute arose regarding severance benefits and Honeywell sought arbitration under the EBA. The Court refused to enforce arbitration and held that "once the contractual basis for an arbitration agreement expires, the arbitration agreement expires." *Id.* at 135 (citing *Litton*, 501 U.S. at 210).

In relying on *Honeywell*, Cognis overlooks the fact that the EBA had an expiration date that mirrored the CBA's expiration. *Id.* at 130. Thus, Honeywell was seeking arbitration under an expired agreement. In the case at bar, the Union is seeking arbitration under the Pension Plan, and as previously discussed, that agreement has not expired or terminated. Even assuming arguendo that the expiration of the CBA did some how affect the Pension Plan, such a determination would ultimately involve an issue of termination requiring examination of the CBA and the Pension Plan. The dispute is therefore properly left to an arbitrator.

Aside from arguing that the termination of the CBA also affected the Pension Plan, Cognis offers two alternative arguments as to why the grievance should not be arbitrated. First, Cognis asserts the issue of arbitrability is moot. Second, Cognis argues that the Union's use of CBA grievance procedures bars the Union from arbitrating under the Pension Plan. These

arguments are not well taken.

As to the question of mootness, Cognis first argues that the lack of damages renders the issue moot. Cognis states that the eligibility and benefits of vested employees is unaffected by the addition of workers under the Pension Plan because it is a defined benefit plan. In addition, Cognis states that replacement workers are merely accruing credited service towards the vesting requirement and will not be entitled to benefits until 2010. Second, Cognis argues that the decertification of the Union as bargaining representatives for any employees also renders the issue moot.

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles County v. Davis,* 440 U.S. 625, 631 (1979); *Lawrence v. Blackwell*, 430 F.3d 368, 370 (6th Cir. 2005). Despite Cognis' arguments, the Union does have a legally cognizable interest in the outcome of the grievance and consequently, the issue of arbitrability. As previously discussed, the Pension Plan is an agreement separate from the expired CBA and has separate termination provisions. Thus, the Pension Plan Agreement is still 'live' and, in fact, Cognis treated it as such by permitting replacement workers to begin accruing credited service under that Plan.[2] Under the Pension Plan, the Union is tasked with providing benefits to retired employees, and Cognis presents no evidence to show that the decertification of the Union affects its responsibilities under the Pension Plan Agreement. Thus, the Union has an interest in the inclusion or exclusion of replacement workers under a Plan which the Union must continue to administer.

Cognis also argues arbitration should be denied because the Union initially sought

---

[2] Cognis could have provided replacement workers with pension benefits under a separate plan.

arbitration pursuant to the grievance procedures in the expired CBA. Undoubtedly, the Union did pursue its grievance through the three step process outlined in the expired CBA. The Union filed a grievance, appealed to a grievance meeting, and then notified the Company that it was "appeal[ing] the grievance to the 3rd step of the grievance procedure, arbitration." (Joint Stip. of Facts, doc. 15 ¶ 8-12.)

However, Cognis' argument is without merit. Under the Pension Plan Agreement, the Union could have asked for arbitration immediately without undergoing the first two steps of the CBA grievance procedure. Certainly, the presumption of arbitrability and the policy in favor of arbitration is not overcome because a party took additional steps to resolve a dispute before resorting to mandatory arbitration.

As a free standing agreement, the Pension Plan contractually obligates Cognis to arbitrate any disputes regarding the meaning or interpretation of the agreement. The parties do not agree on whether replacement workers can be included in the Pension Plan, and this dispute is obviously governed by the terms of the Pension Plan. As such, the court holds that no genuine issue of fact exists and the grievance should be submitted to arbitration according to the terms of the Pension Plan.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

                                                              ___s/Susan J. Dlott_____
                                                              Susan J. Dlott
                                                              United States District Judge